IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| ADAM J. DARCY, | : | |
| Plaintiff, | : | Civil No. 04-5907 (RBK) |
| v. | : | **OPINION** |
| NEW JERSEY TRANSIT RAIL OPERATIONS, INC., | : | |
| Defendant and Third-Party Plaintiff, | : | |
| v. | : | |
| ATLANTIC COUNTY IMPROVEMENT AUTHORITY, | : | |
| Third-Party Defendant and Fourth-Party Plaintiff, | : | |
| v. | : | |
| SMG f/k/a SPECTATOR MANAGING GROUP, | : | |
| Fourth-Party Defendant. | : | |

**KUGLER**, United States District Judge:

Presently before the Court are cross-motions for summary judgment by Third-Party Plaintiff New Jersey Transit Rail Operations, Inc. ("NJT") and Third-Party Defendant Atlantic County Improvement Authority ("ACIA"), disputing the issue of whether ACIA is contractually

obligated to indemnify NJT for any injuries suffered by Plaintiff Adam J. Darcy ("Plaintiff") that are found to have resulted from NJT's negligence.  For the reasons set forth below, this Court will grant ACIA's motion and deny NJT's motion.

I.  BACKGROUND

Plaintiff, a NJT employee, initiated this action against NJT by way of a Complaint filed on November 30, 2004.  In the Complaint, Plaintiff alleged that on December 2, 2002, Plaintiff was descending a stairway in the parking lot of the rail terminal in Atlantic City, New Jersey, when he fell down the stairs and suffered physical injuries as a result of NJT's negligence.  On February 7, 2005, NJT filed a Third-Party Complaint against ACIA, claiming in part that in the lease agreement between the parties, ACIA agreed to indemnify NJT for its liability as to Plaintiff's injuries.  On January 17, 2006, ACIA filed a Fourth-Party Complaint against Fourth-Party Defendant SMG.

II.  STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.  See also Petruzzi's IGA

2

Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993) ("[S]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law."). However, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.  DISCUSSION

At issue in these cross-motions is whether the language of the lease agreement between NJT and ACIA obliges ACIA to indemnify NJT for Plaintiff's injuries found to have resulted from NJT's negligence.

    A.  The Lease Agreement

The parties entered into a written lease agreement on March 12, 1986 and subsequently signed an amendment to this agreement on June 1, 1992. Article 12 of the amendment, entitled "Liability and Insurance," contains the language presently at issue. Section 12.01, entitled "General," reads in pertinent part as follows:

> Financial responsibility for liability for personal injury or property damage which may result from activities conducted after the commencement of construction of the Convention Center Complex, which is hereby deemed to be June 1, 1992, shall be

>allocated between ACIA and NJ TRANSIT as follows in this Article; provided, however, that this Article shall not apply to any such liability which may arise out of activities or events which occurred prior to June 1, 1992.  In no event will either party seek to recover loss of revenues from the other.  **The provisions of this Article shall apply regardless of negligence or fault.**  The party that has financial responsibility under this Article shall have sole responsibility for handling and defense of all such claims and resulting litigation.

(NJT's Br., Horan Cert. Ex. B) (emphasis added).

Section 12.03 of the amendment is titled "ACIA's Sole Liability."  It reads in pertinent part as follows:

>Except for NJ TRANSIT's sole liability as set forth in Section 12.02 of this Agreement,[1] ACIA shall forever protect, defend, indemnify and hold NJ TRANSIT harmless from:
>
>a) Any and all liability for injury or death of any revenue or non-revenue NJ TRANSIT passenger or NJ TRANSIT employee or any other person or persons or a corporation or entity, and for loss of, damage to, or destruction of their property, arising from the construction and existence of the Convention Center Complex, and the existence of the Rail Terminal.

(NJT's Br., Horan Cert. Ex. B.)

Finally, Section 12.04 of the amendment relates to insurance.  It states in pertinent part:

>a)  Prior to June 1, 1992, ACIA at its sole cost and expense shall obtain, and maintain in force so long as the Convention Center Complex and/or the Rail Terminal exists, public liability insurance which insures against any and all damages, liabilities, claims and lawsuits for personal injuries (including death) and damage to, or loss of property for any and all incidents defined as ACIA's sole liability under Section 12.03 of the Agreement.  Such insurance shall also include, without limitation, liability under the Federal Employee Liability Act and Federal Safety Appliance Act.  ACIA, NJ TRANSIT and Amtrak shall be named as parties insured, and ACIA shall provide NJ TRANSIT and Amtrak with written confirmation of its compliance with the requirements of this Subsection a).

(NJT's Br., Horan Cert. Ex. B.)

---

[1] The parties agree that Plaintiff's injury does not fall under NJT's responsibilities to indemnify ACIA as provided in Section 12.02 of the amendment.

    II.       Analysis

Over the past two decades, the New Jersey Supreme Court has emphasized that for an indemnitor to be found to indemnify the indemnitee for the indemnitee's own negligence, such an intent must be expressly and unequivocally stated.

In Ramos v. Browning Ferris Industries, Inc., 510 A.2d 1152 (N.J. 1986), the Court stated that "[i]ndemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally. When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. Thus, a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." Id. at 1159 (citations omitted). In Mantilla v. NC Mall Assoc., 770 A.2d 1144 (N.J. 2001), the Court relied on Ramos in upholding a finding that an indemnification agreement did not cover the indemnitee's negligence, quoting with approval the Appellate Division's statement that "that there is a presumption against indemnifying an indemnitee for its own negligence that can be rebutted only by plain language clearly expressing a contrary intent." Id. at 1149.[2] Finally, in Azurak v. Corporate Property Investors, 814 A.2d 600 (N.J. 2003), the Court reinforced its holdings in Ramos and Mantilla, stating that in order "to bring a negligent indemnitee within an indemnification agreement, we reiterate that the agreement must specifically reference the negligence or fault of the indemnitee." Id. at 112-13.

---

   [2] The Court referenced N.J.S.A. 2A:40A-1 for this assertion. This statutory provision states that agreements that indemnify "against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence" of the indemnitee are against public policy and therefore void and unenforceable. Accordingly, even if this Court were to find the indemnification agreement to cover NJT's own negligence, another party would have to be found to be also negligent in order for the indemnification provision to be enforced.

The Court went on to note that to the extent that prior caselaw had suggested that "broad" indemnification clauses allowed coverage for the indemnitee's negligence, despite not explicitly referring to such, such was no longer valid law. Id. at 601.[3]

    NJT argues that the language in the amendment stating that the indemnification provisions shall apply "regardless of negligence or fault" suffices to represent ACIA's clear, unequivocal intention to indemnify NJT for NJT's own negligence. This Court does not agree. This language fails to meet the New Jersey Supreme Court's requirement of specifically referring to indemnification for the indemnitee's own negligence. Moreover, while the phrase "regardless of negligence or fault" could be construed to mean that ACIA assumes liability regardless of whether damages stem from NJT's negligence, it could also represent that ACIA agrees to indemnify NJT whether or not ACIA is found to have been negligent or at fault. Given the ambiguity in this phrasing, it cannot be said to express ACIA's clear, unequivocal intent to indemnify NJT for NJT's own negligence, as the New Jersey Supreme Court has repeatedly stated is required for such indemnification to exist.

    NJT further argues that the language in the amendment that requires ACIA to maintain insurance for liability under the Federal Employers Liability Act is evidence of ACIA's intention to indemnify NJT for its own negligence. NJT argues that "the reference to liability under the Federal Employee Liability Act can only refer to New Jersey Transit's negligence or fault." (NJT's Br. at 14-15.) Regardless of whether this assertion is correct, it cannot be said to even approach the requirement that ACIA's intention to indemnify NJT for NJT's own negligence be

---

[3] NJT dedicates a substantial portion of its brief to discussing cases that occurred prior to Ramos. Insofar as these cases interpreted broad language to encompass indemnification for an indemnitee's own negligence, NJT's reliance on these cases is clearly misplaced.

clearly and unequivocally stated. As this language does not specifically mention indemnification for NJT's negligence, it cannot be said to meet the standard set forth by the New Jersey Supreme Court.

IV.   CONCLUSION

In sum, this Court concludes that the relevant language in the amendment to the parties' lease agreement is insufficient to express a clear, unequivocal intent by ACIA to indemnify NJT for NJT's own negligence. Had the parties possessed such an intent, the expression of such in the amendment to the lease agreement would not have been difficult; the parties could have simply added language to the agreement stating that ACIA's indemnification of NJT existed regardless of whether it stemmed from NJT's **own** negligence, rather than using the more ambiguous language that the actual amendment did in fact contain. Therefore, based on the foregoing reasoning, this Court will grant ACIA's motion and deny NJT's motion.[4] The accompanying Order shall issue today.

Dated: May 8, 2007                                s/ Robert B. Kugler
                                                  ROBERT B. KUGLER
                                                  United States District Judge

---

[4] This Court notes that its holding in this matter extends only to ACIA's responsibility to indemnify NJT for damages arising from NJT's negligence.